IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 1:14-CR-256 |
| | : | |
| NIBEDITA MOHANTY, M.D. | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

COMES NOW the Accused, Nibedita Mohanty, M.D., by counsel, and moves this Court to enter an Order directing the government to file a Bill of Particulars providing the information requested as to Counts 2, 3, and 4 of the indictment and the Notice of Forfeiture, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. In support of this Motion, Dr. Mohanty states as follows:

### BACKGROUND[1]

On July 24, 2014, the government obtained a 45-count indictment against Dr. Mohanty. The indictment includes three counts related to allegations of nonfatal or fatal overdoses by patients of Dr. Mohanty allegedly caused by controlled substances prescribed by Dr. Mohanty. Count 2 alleges the following:

> 168. On or about May 31, 2011, in Stafford County, Virginia, within the Eastern District of Virginia, the defendant, NIBEDITA MOHANTY, M.D., did unlawfully, knowingly, and intentionally distribute and dispense a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, not for a legitimate medical purpose and beyond the bounds of medical practice, to V.W.

---

[1] Given the nature of the exhibits referred to herein, the exhibits are not filed herewith, but rather will be delivered directly to the Court with courtesy copies of the pleadings and to the government by email.

1

> 169. Death resulted from the use of the substance so distributed.

Count 3 alleges the following:

> 171. On or about May 2, 2011, in Stafford County, Virginia, within the Eastern District of Virginia, the defendant, NIBEDITA MOHANTY, M.D., did unlawfully, knowingly, and intentionally distribute and dispense a mixture and substance containing a detectable amount of oxycodone and hydromorphone, Schedule II controlled substances, not for a legitimate medical purpose and beyond the bounds of medical practice, to V.W.
>
> 172. Serious bodily injury (nonfatal overdose) resulted from the use of the substances so distributed.

Count 4 alleges:

> 174. On or about October 3, 2011, in Stafford County, Virginia, within the Eastern District of Virginia, the defendant, NIBEDITA MOHANTY, M.D., did unlawfully, knowingly, and intentionally distribute and dispense a mixture and substance containing a detectable amount of oxycodone and Fentanyl, Schedule II controlled substances, not for a legitimate medical purpose and beyond the bounds of medical practice, to A.S.
>
> 175. Serious bodily injury (nonfatal overdose) resulted from the use of the substances so distributed.

Counts 2, 3, and 4 provide no other details regarding the nature and circumstances of the alleged prescriptions, the basis for the allegation that Dr. Mohanty's prescriptions were not for a legitimate medical purpose and beyond the bounds of medical practice, the medications ingested by A.S. and V.W. before the overdoses or their sources, or the exact circumstances and causes of the alleged nonfatal overdoses and the death of V.W.

The indictment also includes a Notice of Forfeiture notifying Dr. Mohanty that, in the event that she is convicted of the drug violations charged in Counts 1 through 45, she must forfeit to the United States "any property constituting or derived from, any

proceeds defendant obtained, directly or indirectly, as the result of such violation . . . . Such forfeitable property includes a sum of money equal to at least $100,000 in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in this Indictment."

**ARGUMENT**

A Bill of Particulars providing the requested information is necessary in this case, because Counts 2, 3, and 4 of the indictment are too vague to provide adequate notice to Dr. Mohanty of the nature and scope of the allegations against her. The purpose of a bill of particulars is to provide proper notice to the accused to be able to fully identify the nature and scope of the allegations against her, to prepare her defense, and to be able to investigate and seek out affirmative evidence on her behalf. *See United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989) ("The purpose of a bill of particulars is to inform the defendant of the charges against him in sufficient detail and to minimize surprise at trial.") (internal citation omitted). It serves to provide "any essential detail which may have been omitted from the indictment." *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973) (quoting *Dillen v. Wainwright*, 449 F.2d 331, 332 (5th Cir. 1971)). Such a pleading also assists the Court with the management of the litigation process, evidentiary issues, and to fully account for any Double Jeopardy issues.

The minimal information provided in Counts 2, 3, and 4 fails to provide sufficient notice of what Dr. Mohanty is alleged to have done improperly in prescribing the controlled substances at issue. The allegations in Count 1, which are incorporated by reference in Counts 2, 3, and 4, also fail to adequately state what the government

alleges was improper about the type or quantity of controlled substances prescribed by Dr. Mohanty on the relevant dates prior to the overdoses.

In this case, the requested details surrounding the alleged fatal and nonfatal overdoses are of paramount importance to the ultimate issues at trial. In connection with Count 2, the evidence provided through discovery indicates that V.W.'s death was caused by an accidental overdose and was the result of a combination of medications, at least some of which were not prescribed by Dr. Mohanty. The autopsy report of the Office of the Chief Medical Examiner identified the manner of death as an "Accident." *See* Ex. 1, Report of Investigation, Office of the Chief Medical Examiner (US-00044329). It also reported the cause of death as "acute combined oxycodone and imipramine toxicity." *Id.* More specifically, the Medical Examiner stated that postmortem toxicologic analysis of V.W.'s blood "reveals concentrations of oxycodone, imipramine, and imipramine's active metabolite (desipramine) well within published toxic ranges." *Id.* at US-00044330. The toxicology report indicated that 1.4 mg/L of oxycodone, .58 mg/L of imipramine, and 1.7 mg/L of desipramine were present in V.W.'s blood. *Id.* at US-00044331. In addition to the existence of a combination of drugs in V.W.'s blood, the forensic toxicologist stated in an interview with the FBI that although it would be considered "an exceptional level of tolerance," "[i]t is not impossible for someone to develop sufficient tolerance to oxycodone to survive that blood level of oxycodone [1.4mg/L]." *See* Ex. 2, Interview of Dr. James W. Hutchings (US-00067491). Dr. Virginia Richards, who performed the autopsy on V.W., also stated that imipramine, the other drug found in V.W.'s blood, "can cause respiratory depression." *See* Ex. 3,

Interview of Dr. Virginia Richards (US-00067882-3). Count 2 alleges that Dr. Mohanty prescribed only oxycodone to V.W. prior to her death.

Moreover, the government's evidence indicates that V.W. was in possession of oxycodone prescribed by physicians other than Dr. Mohanty, as well as oxycodone and other drugs obtained illicitly, prior to both of her overdoses. During her hospitalization in California beginning on March 24, 2011 for high-dose opiate dependency, benzodiazepine dependency, ankylosing spondylitis, and seasonal allergic rhinitis, V.W.'s attending physician, Dr. Stuart Finkelstein, wrote in her history of present illness that V.W. "now takes **50 pills of OxyContin per day, taking up to 1500 mg of OxyContin per day** and at least 8mg of Dilaudid and mixing now with Klonopin. She is also occasionally doing heroin." *See* Ex. 4, Lakewood Regional Medical Center – Discharge Summary (US-00045901) (emphasis added). The discharge summary also noted "a long history of addiction since adolescence." *Id.* The amount of OxyContin, the active ingredient of which is oxycodone, used by V.W. on a daily basis as reported in that discharge summary, which was drafted less than three months before V.W.'s overdoses, far exceeds the quantity of oxycodone that the government alleges was prescribed by Dr. Mohanty. In fact, the discharge summary from the California hospital stated that "[s]he is getting medications from other doctors and also buying them on the street." *Id.* Thus, the evidence produced by the government thus far raises serious questions about the nature and sources of the controlled substance obtained and ingested by V.W. before her nonfatal and fatal overdoses. Similarly, according to her own statements to the FBI, A.S. obtained narcotics from sources other than Dr.

5

Mohanty, including illicitly on the street. *See* Ex. 5, First Interview of A.S. (US-00041754-55).

The facts indicating that both V.W. and A.S. obtained controlled substances from multiple sources and used different combinations of medications are central to the question of causation in this case, and they make it incumbent on the government to provide all the essential details regarding the overdoses. In *Burrage v. United States*, 134 S. Ct. 881 (2014), the Supreme Court held that in a case alleging a violation of 21 U.S.C. § 841(b)(1)(C) where it is alleged that death resulted from the defendant's actions, the "death results" sentencing enhancement is an element of the offense that must be proven beyond a reasonable doubt. *Id.* at 887. In order to prove that death "resulted" from the defendant's conduct, the Court held, it is not sufficient for the government to simply prove that the defendant "contributed" to the decedent's death. *Id.* at 890-91. Rather, "[t]he language Congress enacted requires death to 'result from' use of the unlawfully distributed drug, *not from a combination of factors to which drug use merely contributed.*" *Id.* at 891 (emphasis added). As such, the Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892.

In light of the *Burrage* decision, all of the essential details surrounding the nonfatal overdoses of V.W. and A.S. and the fatal overdose of V.W. are critical to the determination of whether the government can prove that those overdoses "resulted from" controlled substances prescribed by Dr. Mohanty. Without information regarding

6

the actual narcotics or other medications ingested by A.S. and V.W. prior to their overdoses, the sources of those medications, and the nature and circumstances of the overdoses, Dr. Mohanty cannot adequately prepare her defense.

In addition, without more details on the circumstances of the alleged nonfatal overdoses, there is no way to adequately assess whether those overdoses involved a "substantial risk of death" as required to prove that "serious bodily injury" resulted from the prescribed substances. As defined in § 802(25), "serious bodily injury" is "bodily injury which involves . . . a substantial risk of death." 21 U.S.C. § 802(25).

Finally, a Bill of Particulars regarding the Notice of Forfeiture is also necessary. Although that Notice states that the forfeitable property "includes a sum of money equal to at least $100,000," it does not describe in any detail the exact amount of property or interest alleged to be forfeitable, the specific sources of such property, and the basis for determining that such property is forfeitable. It is well established that "a person cannot be deprived of property without first being notified of the proposed taking." *United States v. Raimondo*, 721 F.2d 476, 477 (4th Cir. 1983). Although "the indictment need not describe each item subject to forfeiture," *United States v. Amend*, 791 F.2d 1120, 1125 (4th Cir. 1986), "this can be done in a bill of particulars." *Raimondo*, 721 F.2d at 477; *see also United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 665 (4th Cir. 1996) ("A bill of particulars is an appropriate way to pinpoint certain assets, noted in the indictment, as subject to forfeiture."). Accordingly, a Bill of Particulars providing the information requested regarding the assets alleged to be forfeitable is appropriate in this case.

## **CONCLUSION**

For the foregoing reasons, Dr. Mohanty respectfully requests this Court to enter an Order directing the government to file a Bill of Particulars providing the requested information.

                                      Respectfully Submitted,
                                      NIBEDITA MOHANTY, M.D.
                                      By Counsel

GREENSPUN SHAPIRO PC

BY:_____/s/_____
   Peter D. Greenspun, VSB: 18052
   Jonathan Shapiro, VSB: 13953
   Muhammad Elsayed, VSB: 86151
   3955 Chain Bridge Road, 2nd Floor
   Fairfax, Virginia 22030
   (703) 352-0100
   (703) 591-7268 (facsimile)
   pdg@greenspunlaw.com
   js@greenspunlaw.com
   me@greenspunlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of January, 2015, the foregoing document was filed with the Court via CM/ECF, and a copy provided via electronic mail to the following:

>Gene Rossi, Esquire
>Assistant United States Attorney
>Jennifer Ballantyne, Esquire
>Special Assistant United States Attorney
>Nicole Grosnoff
>Special Assistant United States Attorney
>U.S. Attorney's Office
>2100 Jamieson Avenue
>Alexandria, Virginia 22314
>gene.rossi@usdoj.gov
>jennifer.ballantyne2@usdoj.gov
>nicole.grosnoff2@usdoj.gov

>_____/s/_____
>Peter D. Greenspun, Esquire (VSB 18052)
>Jonathan Shapiro, Esquire (VSB 13953)
>Muhammad Elsayed, Esquire (VSB 86151)